## Case No. 15,746.

### UNITED STATES v. MAUNIER.

[1 Hughes, 412;[1] Mart. N. C. 79.]

Circuit Court, D. North Carolina. 1792.

CRIMINAL LAW—EVIDENCE—EXAMINATION IN WRITING—INDICTMENT.

1. An examination of a prisoner, made before his commitment, under impressions of fear, whether signed or not by him, cannot be read in evidence against him on his trial under indictment for murder on the high seas.

2. An indictment for murder on the high seas need not state the length and depth of the wound which caused the death.

Indictment for murder on the high seas.

Before PATERSON, Circuit Justice, and SITGREAVES, District Judge.

Mr. Attorney of the United States Hill offered to give in evidence the examination of the prisoner before his commitment.

Mr. Martin, for the prisoner, objected to this: 1st. Because the prisoner at the time of his examination was under impressions of fear. 2d. Because the examination was not subscribed by the prisoner.

1. The prisoner was a French sailor, and the murder with which he stood charged had been committed upon the high seas. On his landing in North Carolina he was taken up and committed to jail. From thence he was taken on the next day, brought into court in irons, and examined, without being informed that he was then under an examination and not on his trial. He understood not the English language, and no one informed him of what was passing. There was room to believe that he thought, when he was remanded to jail, that he had been tried, convicted, and condemned, for he asked a person who understood the French language on what day he was to be executed. The counsel said although in the case of a person who had resided some time in this country, or in others in which the proceedings are carried on by jury, the objection would be frivolous, yet it must have weight in the case of a foreigner unacquainted with our laws and our language; that what the prisoner had seen in court, except perhaps the confrontation of witnesses, was all that in familiar circumstances he would have seen in his own country had he been tried there, where sentence of death is not pronounced in court in presence of the

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

prisoner, but read to him afterwards by the clerk in the dungeon.

2. The examination and confession subscribed by an offender before a justice of the peace is good and sufficient evidence against such offender. Gilb. Ev. 140. The examination of Sterne and Boroski, was, by the chief justice, refused to be read at their trial. See 3 State Tr. p. 470. And Serjeant Wilson, in his edition of Hale's Pleas of the Crown (volume 2, p. 585, in notes), adds a query, whether the chief justice was not right in such refusal. For, by the opinion of some judges now living, the statute does not extend to the examination of the party accused unless he signed his examination, but only to the witnesses or persons accusing. In Vaughan's Case, Mr. Crauley having made oath that the examination was taken before Sir Charles Hedges, and signed by the prisoner, it was read. 5 State Tr. 229. In Harrison's Case, the attorney-general desired that the defendant's examination, taken before the Lord Chief Justice Brumpton, might be read, and the defendant having acknowledged the hand to be his that was subscribed to it, it was read accordingly. 7 State Tr. 118. In Layer's Case, the prisoner's counsel said, and the chief justice granted, that this examination could not be read unless it was signed by him. 8 State Tr. 474, 8 Mod. 89.

PATERSON, Circuit Justice, thought the examination ought to have been signed by the prisoner.

SITGREAVES, District Judge, said the first objection had much weight with him, and

Mr. Attorney of the United States withdrew his motion.

The prisoner was found guilty upon other evidence.

And it was moved in arrest of judgment, on the ground that the length and depth of the wound were not mentioned in the indictment.

The prisoner's counsel cited Heydon's Case,[2] 4 Coke, 42.

THE COURT did not intimate that they had any doubt, but said if they had they would direct a copy of the indictment and reasons to be transmitted to the supreme court. Curia advisare vult.

THE COURT directed the prisoner to be arraigned on another indictment which had been found against him.

Whereupon he pleaded not guilty, and THE COURT ordered the trial to be proceeded on instantly.

And with some difficulty was prevailed upon to adjourn it to the succeeding Monday, it being Saturday.

An order was then made that the marshal send expresses to the grand jury (who had been discharged), commanding their immediate return.

---

[2] This reference is at fault; but is taken literally from Judge Martin's book.

On Monday following the prisoner was brought to the bar, as he and his counsel expected, to be tried on the second indictment. But THE COURT informed the bar they would take up the motion in arrest of judgment.

On the part of the United States several precedents of indictments were read out of West, in which the length and depth of the wound are not mentioned.

Mr. Martin observed that, in all the indictments (but one) in which the length and depth of the wound were not mentioned, the instrument had gone through the body of the person killed, some limb had been cut off, or the wound had been given with a blunt weapon. In this case the mortal wound was stated to have been given with an axe, on the head. That the authority in Coke was not only unshaken, but frequently recognized.

THE COURT, however, overruled the motion, without making any observation, and passed sentence of death.

At the same time sentence was passed on three other men who had been included in the same indictment, and they were soon after executed.

This is the first time that judgment of death was given under the authority of the United States.